IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNETH JOHNSON,

     Plaintiff,

 v.

FULTON COUNTY, GEORGIA,
RUBY HARDY, and KATHLEEN
TOOMEY,

     Defendants.

CIVIL ACTION FILE NO.

1:17-CV-03921-AT-WEJ

**ORDER and**
**NON-FINAL  REPORT  AND  RECOMMENDATION**

This matter is before the Court on defendants' Motion to Dismiss [14] and

plaintiff's Motion for Leave to Amend [20].  For the reasons explained below, the

undersigned **GRANTS** plaintiff leave to amend the Complaint, and

**RECOMMENDS** that defendants' Motion to Dismiss be **GRANTED IN PART**

**and DENIED IN PART**.

I.    **BACKGROUND**

In response to an Order [12] dated January 5, 2018, plaintiff, Kenneth

Johnson, filed a First Amended Complaint [13] against his former employer,

Fulton County, Georgia (the "County") and two of his former supervisors, Ruby

Hardy and Kathleen Toomey.  He alleges three claims under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII")—

retaliation, sex discrimination, and hostile work environment.[1]  (See Sec. Am. Compl. [13], Counts One-Three, respectively.)   Mr. Johnson also alleges a gender-based discrimination claim under the Equal Protection Clause of the Fourteenth Amendment and a First Amendment retaliation claim, seeking relief for both under 42 U.S.C. § 1983.  (Id., Counts Four-Five, respectively.)

The County and the individual defendants filed a Motion to Dismiss [14] the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 2, 2018.  Plaintiff filed a Response [18] on February 26, 2018.  Defendants filed a Reply Brief [19] on March 12, 2018.  Then, on March 14, 2018, plaintiff filed a "Motion for Leave to Amend the Complaint to Correct Scrivener's Errors and Inadvertent Omissions" [20].  Mr. Johnson attached as Exhibit A to his Response Brief a proposed Third Amended Complaint [20-1].

The procedural posture of this case is again problematic.  The Court has before it a Motion to Dismiss the Second Amended Complaint, but also a Motion for Leave to Amend to file a Third Amended Complaint, which plaintiff contends corrects scrivener's errors or inadvertent omissions in the Second Amended Complaint.

---

[1] This pleading should have been captioned "Second Amended Complaint." The Court will use its correct name hereafter.

If this Court grants plaintiff leave to amend, then the Third Amended Complaint would supersede the Second Amended Complaint.  See Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.") (internal quotation marks and citation omitted). Typically, the filing of an amended complaint renders moot an earlier-filed motion to dismiss.  See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007).  However, that rule is not applicable where, as here, there is no discernible difference between the Second and Third Amended Complaints.

> Defendants . . . "are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.  If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."

Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 641 (E.D. Pa. 1999) (quoting 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 at 558 (2nd ed. 1990)).

Mr. Johnson contends that he did not intend any substantive modifications of his claims in the Third Amended Complaint, but sought to correct what he calls "scrivener's errors" in the Second Amended Complaint.  Therefore, the Motion to Dismiss will not be rendered moot if the Court allows the filing of the Third

Amended Complaint.  Thus, the Court first considers plaintiff's Motion for Leave to Amend [20].

## II.   PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff seeks leave to file the Third Amended Complaint under Rule 15 of the Federal Rules of Civil Procedure, which provides in relevant part as follows: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Courts have interpreted these provisions liberally, in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single judicial proceeding."  Breckenridge Creste Apts., Ltd. v. Citicorp Mortgage, Inc., 826 F. Supp. 460, 463 (N.D. Ga. 1993) (internal quotation marks omitted).  District courts have only limited discretion to deny a party leave to amend the pleadings.  Espey v. Wainwright, 734 F.2d 748 (11th Cir. 1984).  Thus, this Court should allow plaintiff leave to amend unless there is a substantial countervailing reason.  See Grayson v. K Mart Corp., 79 F.3d 1086, 1110 (11th Cir. 1996).  "In determining whether to grant leave to amend, a court may consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment."  Id.

4

Plaintiff seeks to amend the Second Amended Complaint to remove one phrase that he says is inappropriately repeated five times (see proposed Third Am. Compl. ¶¶ 74, 86, 98, 105, 114)[2] and to cure his failure to include defendant Fulton County's name in three paragraphs (id. ¶¶ 83-85). Because plaintiff filed the instant Motion [20] quickly after having the errors pointed out to him in defendants' Reply Brief, there has been no undue delay. Defendants do not point to any bad faith or dilatory motive on the part of the movant. While there has been some failure to cure deficiencies by amendments previously allowed, plaintiff contends that he seeks to amend to ensure that his claims are adequately asserted and the proper remedies are sought.

Given the governing standards, and given that the Third Amended Complaint seeks to correct only what plaintiff calls "scrivener's errors," the Court

––––––––––––––––––––

[2] Despite plaintiff's contention, paragraph 74 is the same in both the Second Amended Complaint and the proposed Third Amended Complaint. Plaintiff writes that he replaced the sentence he had used in paragraphs 74, 86, 98, 105, and 114 of the Second Amended Complaint (i.e., "Plaintiff re-alleges each paragraph set forth above and incorporates them by reference as if fully set forth herein") with a new one: "Plaintiff re-alleges the factual allegations in paragraphs 14-73 and incorporates them by reference as if fully set forth herein." (Pl.'s Mot. for Leave to Amend [20], at 4.) However, when one examines the proposed Third Amended Complaint, plaintiff actually inserted in paragraphs 86, 98, 105, and 114 the following language: "Plaintiff re-alleges the factual allegations in **paragraphs 8 to 13** and incorporates them by reference as if fully set forth . . . herein." (Third Am. Compl.; emphasis added.)

**GRANTS** the Motion for Leave to Amend [20].  The Clerk is **DIRECTED** to docket the Complaint that plaintiff filed [20-1] as the Third Amended Complaint.

## III.   DEFENDANTS' MOTION TO DISMISS

### A.   Governing Standards

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, all of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff.  Young Apts., Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must allege "enough facts to state a claim that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

A motion to dismiss does not test the merits of a case, but only requires that "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'"  Mills v. Foremost Ins. Co.,

511 F.3d 1300, 1303 (11th Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 555).[1]

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

### B.    Relevant Allegations of the Third Amended Complaint

Plaintiff is an African-American male, and although he is perceived to be male, he openly exhibits feminine traits.  (Third Am. Compl. ¶¶ 15-16.)  He speaks at a higher pitch, maintains long and well-manicured nails, and often wears feminine clothes and accessories.  (<u>Id.</u> ¶ 17.)  Plaintiff often wears feminine hair styles and makes feminine gestures when he speaks.  (<u>Id.</u> ¶ 19.)

---

[1] <u>Twombly</u> abrogated the oft-quoted statement in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), that a "'complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Twombly</u>, 550 U.S. at 561 (quoting <u>Conley</u>, 355 U.S. at 45-46).

Before his employment with the County, plaintiff worked at the Georgia Department of Public Health, which terminated him for "allegations of fraudulent use of a state rental car and the associated gasoline card." (Third Am. Compl. ¶¶ 24, 26.) Plaintiff claims that he was never issued a gas card and never used the assigned rental car fraudulently. (Id. ¶ 27.) However, because this termination occurred during his probationary period, plaintiff asserts that he was unable to challenge it. (Id. ¶ 28.)

When he subsequently sought employment with Fulton County, plaintiff filled out an employment application and participated in an employment interview. (Third Am. Compl. ¶ 29.) When asked on his Fulton County employment application if he had ever been discharged or asked to resign, plaintiff responded "yes," and stated that he had not met the probationary period. (Id. ¶ 30.) Plaintiff also informed Fulton County of the circumstances of his discharge during his in-person interview. (Id. ¶ 31.) Defendant Hardy attended that interview and was aware of the reason for plaintiff's termination from the Georgia Department of Public Health. (Id. ¶ 32.)

Plaintiff was hired following that interview, because he alleges that he worked for Fulton County within the Communicable Disease Prevention Branch of its Department of Health and Wellness. (Third Am. Compl. ¶ 18.) One of his

8

supervisors was Ms. Hardy, an African-American female who conforms to gender-based stereotypes.  (Id. ¶¶ 12, 20.)

According to plaintiff, he used his skills, expertise, and connections to secure contracts for the County with the Center for Disease Control ("CDC") and to implement Fulton County's agenda and initiative towards AIDS/HIV prevention and the prevention of other sexually-transmitted diseases.  (Third Am. Compl. ¶ 33.)  Nevertheless, masculine presenting men were promoted, assigned prestigious tasks, and were permitted to be figureheads and speakers on behalf of the County, while plaintiff was only permitted to lead small, unpublicized initiatives to homosexuals.  (Id. ¶ 35.)  Despite being well qualified to address issues of health, management, finances, and logistics, plaintiff was routinely asked to work and was assigned to participate in fashion and design for which he was unqualified and had not volunteered to do.  (Id. ¶ 36.)

Mr. Johnson contends that the County maintained a pattern and practice of sex discrimination as to pay, raises, benefits, ability to be free of sex based discrimination, harassment and intimidation against men who demonstrated feminine traits, and has permitted women that conform to gender based behavioral norms to discriminate against feminine appearing men without consequence despite many complaints.  (Third Am. Compl. ¶¶ 21-22.)

Plaintiff alleges that any time he had contact with Ms. Hardy, she made derogatory comments about his high-pitched feminine voice, his feminine mannerisms, and his feminine style of dress.  (Third Am. Compl. ¶ 48.)  Ms. Hardy also made offensive comments designed to make effeminate men "feel less than stereotypical masculine men."  (Id. ¶ 38.)  For example, Ms. Hardy made a comment about the genitals of masculine men.  (Id. ¶ 39.)  Specifically, regarding a former male employee, Reginald Brown, Ms. Hardy said, "[Y]ou can see the lumbar coming from a mile away."  (Id.)  When Mr. Brown retired, Ms. Hardy hanged a clothing article in the office where everyone could see it to symbolize "his jersey."  (Id. ¶ 40.)  Additionally, in October 2015, Ms. Hardy told plaintiff not to come in wearing a dress like Raymond Dukes, another male whose behavior and style of dress did not conform to gender stereotypes.  (Id. ¶ 42.)

The Department of Health and Wellness serves primarily effeminate or feminine acting men and men whose appearance does not conform to gender stereotypes.  (Third Am. Compl. ¶ 43.)  Ms. Hardy would often use the code term "client" to refer to effeminate or feminine acting men and men whose appearance and behavior does not conform to gender stereotyping.  (Id. ¶ 44.)  In March 2016, while preparing for an HIV and AIDS outreach or initiative, Ms. Hardy said to plaintiff, "I can't tell if you're a client or worker based on the different types of haircuts you wear."  (Id. ¶ 45.)

Plaintiff also alleges that Ms. Hardy would distinguish straight women who associated with masculine men verses feminine men by saying "tens han[g] with tens" and "twos hang with twos," implying that masculine men and the women who associated with them would be considered "tens" while men who exhibited feminine traits and the women who associated with them would be considered "twos." (Third Am. Compl. ¶ 47.)

Plaintiff alleges that he complained to his "supervisors" about Ms. Hardy. (Third Am. Compl. ¶ 49.)  He also claims that other employees and former employees, including Walker Tisdale and Suzan Luker, made complaints to defendant Toomey and other supervisors about Ms. Hardy's behavior.[3]  (Id. ¶ 50.) Despite receiving those complaints, Ms. Toomey and Fulton County failed to take action to stop, curtail, or prevent Ms. Hardy's conduct.  (Id. ¶ 51.)

The CDC, as the primary funder of the work carried out by the Communicable Disease Prevention Branch, regularly conducted audits to ensure that the program was progressing according to schedule, that personnel were effectively managing personnel and events, and to ensure that the money was being properly allocated and spent.  (Third Am. Compl. ¶ 54.)  During one of the audits in August 2015, plaintiff informed several individuals from the CDC and

_____

[3] Plaintiff neither identifies these supervisors to whom he or others complained nor alleges the substance of those complaints.

several supervisory individuals within Fulton County, that Ms. Hardy was improperly allocating or spending the CDC's grant money by having individuals receiving CDC money perform tasks not related to the mission or agenda of the grant. (Id. ¶ 55.)[4] Plaintiff also informed the CDC that Ms. Hardy was harassing several men who exhibited feminine traits. (Id. ¶ 56.)

As a result of plaintiff's report, the CDC pressured Fulton County to take action against Ms. Hardy, who was relieved of all personnel management tasks and authority over the CDC's grant. (Third Am. Compl. ¶ 57.) On or about mid-March or early-April 2016, Ms. Hardy sought a promotion within Fulton County. Upon information and belief, Ms. Hardy was informed that, because of the complaint made by plaintiff to the CDC, her promotion was denied. (Id. ¶ 58.)

Within weeks of being informed that she had been denied a promotion, Ms. Hardy informed several individuals that she was going to get plaintiff Johnson terminated. (Third Am. Compl. ¶ 59.)[5] Plaintiff alleges that Ms. Toomey was aware of Ms. Hardy's desire to have him terminated. (Id. ¶ 73.)[6] Upon information and belief, Ms. Hardy began to look through plaintiff's work,

---

[4] Plaintiff does not identify any of these individuals to whom he complained about Ms. Hardy.

[5] Plaintiff does not identify any of these individuals.

[6] Plaintiff does not allege how Ms. Toomey obtained this knowledge of Ms. Hardy's desire. He also fails to allege whether Ms. Toomey had knowledge of why Ms. Hardy had this desire.

personnel file, and conducted interviews with other employees to find a reason to cause Fulton County—through Ms. Toomey—to fire plaintiff.  (Id. ¶ 60.)

Ms. Hardy knew that the County would have to take adverse action (including termination) against plaintiff if any suspicious behavior was made public.  (Third Am. Compl. ¶ 61.)  Plaintiff alleges upon information and belief that in early-April 2016, Ms. Hardy informed reporter Richard Belcher or WSB-TV of the circumstances of plaintiff's termination from the Georgia Department of Community Health and the information regarding his employment process with Fulton County.  (Id. ¶ 62.)  On April 17, 2016, WSB-TV aired a news story about fraud and corruption in Fulton County, indicating that Fulton County had hired plaintiff despite his previous termination by the State of Georgia for fraud.  (Id. ¶ 63.)  Defendants, as pretext, in justifying their decision to terminate Mr. Johnson, indicated that an investigation was conducted into the employment application that plaintiff had submitted over five years earlier.  (Id. ¶ 64.)[7]

While the purported investigation was being conducted, defendants neither informed plaintiff that he was under investigation nor permitted him to participate in or respond to the investigation.  (Third Am. Compl. ¶ 65.)  Within weeks of

---

[7] During the entire time that plaintiff worked for Fulton County, he alleges that no one reviewed the application of any stereotypical masculine man employed by the Department of Health and Wellness.  (Third Am. Compl. ¶ 71.)

Ms. Hardy's statements regarding her desire to terminate plaintiff, and after receiving a recommendation for termination from Ms. Toomey, Fulton County summarily terminated plaintiff's employment without conducting an independent investigation.  (Id. ¶ 66.)  On or about April 18, 2016, Ms. Toomey issued a letter memorializing plaintiff's termination, which indicated that it was effective on April 19, 2016.  (Id. ¶¶ 67-68.)

### C.    The Five Counts of the Third Amended Complaint

In Count One, plaintiff seeks to hold Fulton County liable for retaliation under Title VII.  Plaintiff alleges that his complaint to the CDC in August 2015 about Ms. Hardy's sex-based discrimination was protected activity; that Ms. Hardy learned of his complaint to the CDC sometime between mid-March and early-April 2016; and thereafter, Ms. Hardy knew that plaintiff would be terminated upon publication of any scandal, whether substantiated or not.[8]  (Third Am. Compl. ¶¶ 75-76, 79-80.)  Therefore, Ms. Hardy intentionally provided false information to WSB-TV, and on April 17, 2016, that television station broadcast

---

[8] Plaintiff also alleges that, following his complaint to the CDC, defendants treated him "hostilely, ignor[ed] Plaintiffs' reports about other employees' inappropriate conduct, [and] intentionally allow[ed] other employees to harass, bully and intimidate the Plaintiff with derogatory comments."  (Third Am. Compl. ¶ 77.)  However these allegations are contrary to the timeline established in the "Factual Allegations" of the Third Amended Complaint (¶¶ 14-73), which clearly allege that the only thing that happened to plaintiff after his complaint to the CDC was a retaliatory reaction by a spiteful Ms. Hardy that led to his termination.

a story indicating that plaintiff had engaged in fraudulent behavior, which led to his termination on April 18, 2016.  (Id. ¶¶ 81-82.)  As a result of the actions of its agent (Ms. Hardy), plaintiff seeks to recover damages against Fulton County for alleged retaliation.  (Id. ¶¶ 83-85.)

In Count Two, plaintiff alleges a gender non-conformity claim against the County, which constitutes sex-based discrimination in violation of Title VII.  (Third Am. Compl. ¶¶ 87-90.)   Mr. Johnson contends that the County discriminated against him because of his failure to conform to sex stereotypes associated with other males by assigning him belittling tasks for which he was not qualified, substantially changing his responsibilities, allowing others to bully, harass, belittle, berate, and intimidate him, and terminating his employment.  Males who conformed to gender stereotyping were not subjected to such behavior.  (Id. ¶ 90.)  Plaintiff alleges that the County "treated him differently from other employees, specifically men who conformed to gender stereotypes with whom he was similarly situated."  (Id. ¶ 93.)

In Count Three, plaintiff alleges a Title VII sexually hostile work environment claim against the County.  Mr. Johnson asserts that he was made to work in an atmosphere that was hostile by virtue of unsolicited and unwelcomed sex-based comments regarding non-conforming, gender-based behavior, comments regarding the genitals of other employees, and other sex-based

comments, sexual gestures, sexual innuendo, and other sexually charged conduct. (Third Am. Compl. ¶ 100.)   He claims that this harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a working environment that was hostile, intimidating, insulting, and abusive.  (Id. ¶ 101.)  He alleges that the County failed to take prompt remedial action and was deliberately indifferent to the hostile conduct.  (Id. ¶ 102.)

In Count Four, plaintiff alleges that defendants Hardy and Toomey, acting under color of state law, violated his rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating based on gender stereotypes. (Third Am. Compl. ¶¶ 106-108.)  He claims that they deprived him of his right to continue his employment without sex-based discrimination, and engaged in bullying, harassment, intimidation based on gender stereotyping, and retaliation. (Id. ¶ 108.)[9]  He seeks to remedy this alleged violation through Section 1983.  (Id. ¶ 112.)

In Count Five, plaintiff alleges that defendants Hardy and Toomey, acting under color of state law, violated his free speech rights under the First Amendment by subjecting him to adverse employment action in the form of harassment, gender-based discrimination, bullying, intimidation, assignment of

_____

[9] As discussed supra note 8, this allegation of bullying, etc., following his complaint contradicts the timeline established in the Third Amended Complaint.

belittling tasks, subjecting him to a hostile work environment, and terminating him after he reported claims of improper use of government funds. (Third Am. Compl. ¶¶ 115-18.) He asserts that his speech was a substantial and/or motivating factor in the adverse employment actions. (Id. ¶ 119.) Plaintiff seeks to remedy this alleged violation through Section 1983. (Id. ¶ 122.)

### D.   Defendants' Challenges to the Third Amended Complaint

As noted above, defendants' challenges to the Second Amended Complaint generally apply to the Third Amended Complaint. The Court addresses them separately below.

### 1.   Shotgun Pleading

Defendants argue that the Second Amended Complaint should be dismissed because it is "shotgun pleading." (Defs.' Br. [14-1], at 4-6.) A shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Although the Second Amended Complaint still reflects some hallmarks of a shotgun pleading, plaintiff generally corrected those deficiencies in the Third Amended Complaint (with the exception of the errors in ¶¶ 86, 98, 105, and 114, identified supra note 2). Therefore, the undersigned will not recommend

dismissal of the Third Amended Complaint because, if one carefully reads that pleading, it is no longer "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Fl. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).[10]

## 2.   Are Plausible Claims Alleged in Counts One-Three?

Defendants argue that plaintiff fails to allege plausible Title VII claims against the County for retaliation (Count One), gender discrimination (Count Two), and hostile work environment (Count Three).  (Defs.' Br. [14-1], at 7-17.) Plaintiff rebuts those arguments.  (Pl.'s Resp. [18], at 6-12.)  The Court addresses each Count separately below.

### a)   Count One:  Title VII Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that:  (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action (i.e., one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination); and (3) there was a causal connection between the protected activity and the adverse action.  See Butler v.

---

[10] Defendants argue that Ms. Hardy should be dismissed from the Title VII claim alleged in Count One of the Second Amended Complaint because there is no individual liability under that statute; liability only flows to the employer. (Defs.' Br. [14-1], at 6-7.)  The Third Amended Complaint (¶¶ 83-85) corrected any confusion over this point.  It is now clear that plaintiff seeks to hold only the County liable under Title VII for violations alleged in Counts One-Three.

Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008); see also

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  As for this

third factor, a "'close temporal proximity' between the protected expression and

an adverse action is sufficient circumstantial evidence of a causal connection for

purposes of a prima facie case."  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th

Cir. 2004).[11]  The plaintiff must also show that the decision maker was aware of

the protected expression and that there was close temporal proximity between this

awareness and the materially adverse action.  Farley v. Nationwide Mut. Ins. Co.,

197 F.3d 1322, 1337 (11th Cir. 1999).  The requirement that the decision maker

be aware of the protected expression "rests upon common sense.  A decision

maker cannot have been motivated to retaliate by something unknown to him."

Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).

Defendants contend that Count One should be dismissed because plaintiff

alleges no facts showing that the person whom he contends recommended his

––––––––––––––––––––

[11] Defendants assert that Count One should be dismissed because there was no close temporal proximity between his complaint to the CDC in August 2015 and his termination almost eight months later in April 2016.  (Defs.' Br. [14-1], at 9.)  However, as plaintiff points out, only about a month elapsed between when Ms. Hardy found out about his complaint to the CDC and when the County fired him.  (Pl.'s Resp. [19], at 8.)

19

termination—Ms. Toomey—was aware of his protected activity.[12] The Court agrees. Plaintiff alleges that he complained to the CDC about Ms. Hardy, that the CDC pressured the County to take action against her, and that Ms. Hardy became aware that his complaint was the reason she had been denied a promotion. (See Third Am. Compl. ¶¶ 56-58.) But, there is no allegation that Ms. Toomey knew about Mr. Johnson's complaint to the CDC or had anything to do with the denial of a promotion to Ms. Hardy. Plaintiff also alleges that Ms. Hardy informed "several individuals" that she was going to get him terminated (id. ¶ 59), but he does not allege that Ms. Toomey was one of those individuals. While plaintiff asserts that Ms. Toomey was "aware of Defendant Hardy's desire" to have him terminated, he fails to allege how Ms. Toomey obtained that awareness or whether Ms. Toomey was aware that a retaliatory animus motivated that desire.

---

[12] As explained in Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 511 (2002), a plaintiff need not satisfy the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework at the pleading stage in order to state a discrimination or retaliation claim. Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." Id.; see also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) ("Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination.") (citations and quotation marks omitted). "Stated another way, an employment discrimination plaintiff must allege the necessary prima facie elements, but is not required to satisfy the McDonnell Douglas burden shifting analysis." Zachary v. Comprehensive Health Mgmt., Inc., No. 8:12-CV-530-T-33AEP, 2012 WL 3264899, at *2 (M.D. Fla. Aug. 9, 2012).

The Court agrees with defendants' contention that "mere awareness of Hardy's desire to have Plaintiff terminated does not mean Toomey knew or approved of the reasons for Hardy's alleged desire." (Defs.' Reply Br. [19], at 5.) Plaintiff writes in his brief that he "presents direct knowledge of Kathleen Toomey." (Pl.'s Resp. [18], at 8.) However, the Third Amended Complaint contains no factual allegation showing that Ms. Toomey knew of plaintiff's complaint about Ms. Hardy or that she recommended Mr. Johnson's termination for retaliatory reasons.[13]

Given that the Third Amended Complaint alleges no facts making a plausible claim of retaliation under Title VII, the undersigned **RECOMMENDS** that Count One be **DISMISSED** for failure to state a claim. See McCullough v.

---

[13] Paragraph 60 of the Third Amended Complaint alleges that Ms. Hardy sought to find a reason to cause Fulton County "through Defendant Kathleen Toomey to fire Plaintiff Johnson." This could be read to imply that Ms. Hardy used Ms. Toomey as a "cat's paw." "This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed [a] biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999) (citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)). Plaintiff likely did not argue the cat's paw theory because this case does not fit that mold. Plaintiff did not allege that Ms. Hardy recommended plaintiff's termination to Ms. Toomey. Instead, Ms. Hardy allegedly gave false information to a TV reporter, who aired a story that apparently angered Ms. Toomey and led her to recommend plaintiff's discharge.

Bd. of Regents of the Univ. Sys. of Ga., 623 F. App'x 980, 983 (11th Cir. 2015) (affirming grant of motion to dismiss because the plaintiff alleged no facts to link the denial of admission to one college with his earlier complaint of race discrimination at another; applying the plausibility standard, the court concludes that plaintiff failed to set out sufficient facts to raise his allegations of retaliation above the speculative level); see also Ramsey v. Greenbush Logistics, Inc., No. 3:17-CV-01167-AKK, 2017 WL 6492608, at *5 (N.D. Ala. Dec. 19, 2017) (granting motion to dismiss where plaintiff failed to allege that the decision maker was aware of the protected conduct at the time of the adverse employment action); Robinson v. Venus Thread, Inc., No. 3:08-CV-65-JTC-ECS, 2009 WL 10665764, at *6 (N.D. Ga. Dec. 31, 2009) (same), report and recommendation adopted, No. 3:08-CV-65-JTC, 2010 WL 11506016 (N.D. Ga. Feb. 22, 2010).

As discussed infra, the Court is recommending that one of plaintiff's gender discrimination claims and his hostile work environment claim be allowed to proceed.  As part of discovery for those claims, plaintiff will likely depose the purported decisionmaker—Ms. Toomey.  If Ms. Toomey discloses that she knew about plaintiff's protected activity, and there is some evidence of a causal

connection between the protected activity and the adverse action, then plaintiff can seek to amend the Complaint to reassert a retaliation claim.[14]

### b)    Count Two:  Title VII Gender Discrimination

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  This provision "prohibits sex-based discrimination that alters the terms and conditions of employment." Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1300 (11th Cir. 2007).

The Third Amended Complaint alleges that sex bias infected both the terms and conditions of plaintiff's employment as well as his discharge.  Therefore, plaintiff is making two Title VII claims:  (1) a discriminatory "terms and conditions" of employment claim; and (2) a discriminatory discharge claim. Defendants' Motion to Dismiss does not address plaintiff's discriminatory terms and conditions claim; therefore, that claim survives this Motion to Dismiss.

---

[14] The Court does not recommend allowing plaintiff to file a fourth amended complaint.  First, he does not request leave to do so.  See Wagner v. Daewoo Heavy Indus. America Corp., 314 F.3d 541, 542 (11th Cir. 2002) (a "district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").  Second, he has already had three chances to make proper allegations and has not done so.

With regard to plaintiff's discriminatory discharge claim, defendants cite the elements of a prima facie case and argue that Mr. Johnson failed to allege a plausible claim because he did not identify any similarly situated gender conforming male who was treated better than him.  (Defs.' Br. [14-1], at 12.) However, as already discussed, an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the McDonnell Douglas burden-shifting framework.  Instead, it need contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Swierkiewicz, 534 U.S. at 513.  This is because the McDonnell Douglas framework is an evidentiary standard, not a pleading standard, and is applicable at summary judgment rather than the pleading stage.  See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam).[15]  Thus, a plaintiff need not satisfy the McDonnell Douglas standard to plead a plausible discrimination claim.  Surtain, 789 F.3d at 1246.  Nevertheless, the complaint must still provide enough factual matter to plausibly suggest intentional discrimination.  Id.

---

[15] The case on which defendants rely, Paris v. Keystone Foods, LLC, 959 F. Supp. 2d 1291 (N.D. Ala. 2013), was before that court on a motion for summary judgment, not a motion to dismiss.  (See Defs.' Br. [14-1], at 12.)

Court Two does not provide enough factual matter plausibly to suggest intentional discrimination motivated plaintiff's discharge.  There is no allegation that Ms. Toomey, the individual whom plaintiff says recommended his termination to the County, did so because of his failure to conform to gender stereotypes.  Instead, the inference drawn from the Third Amended Complaint is that Ms. Toomey recommended that the County terminate plaintiff only after WSB-TV aired a story (at Ms. Hardy's behest) revealing that he had been terminated from a previous State job for committing fraud.  The allegation that the County never reviewed the employment applications of any stereotypical masculine male employed in the Department of Health and Wellness (see Third Am. Compl. ¶ 71) fails to show that Ms. Toomey made her recommendation because she was biased against men who displayed feminine traits.  Therefore, the undersigned **RECOMMENDS** that the Title VII discriminatory discharge claim alleged in Court Two be **DISMISSED**. [16]   However, the Title VII discriminatory terms and conditions of employment claim alleged in Count Two should be allowed to proceed.

―――――――――――――

[16] Just as with the retaliation claim, if discovery reveals evidence that Ms. Toomey made her recommendation because of discriminatory animus she held against men who failed to conform to gender stereotypes, then plaintiff can seek leave to amend the complaint.

### c) Count Three:  Title VII Hostile Work Environment

Sexual harassment can constitute discrimination based on sex for purposes of Title VII.  See Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999) (en banc).  Generally, sexual harassment comes in two forms:  harassment that does not result in a tangible employment action (traditionally referred to as "hostile work environment" harassment), and harassment that does result in a tangible employment action (traditionally referred to as "quid pro quo" harassment).  See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 760-63 (1998).  Mr. Johnson seeks to allege a sexually hostile work environment claim here.  (See Third Am. Compl., Count Three.)

To establish such a claim, Mr. Johnson must allege facts showing (1) that he belongs to a protected group; (2) that he has been subjected to unwelcome sexual harassment; (3) that the harassment was based on his sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding his employer liable.  Mendoza, 195 F.3d at 1245; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that to state a hostile work environment claim post-Iqbal, employee was required to allege

facts sufficient to satisfy the above-quoted five elements).[17]  Defendants argue that plaintiff has failed to allege facts sufficient to satisfy elements four and five, listed above.  (See Defs.' Br. [14-1], at 15.)  Plaintiff asserts that he has.  (See Pl.'s Resp. Br. [18], at 10-12.)

With regard to element four, plaintiff must show that he was subjected to a workplace that was "permeated with 'discriminatory intimidation, ridicule, and insult.'"  Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  To be actionable, the challenged conduct must create an environment that is both objectively hostile or abusive (the reasonable person standard) and that the plaintiff himself perceives to be abusive (the subjective standard).  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).  The court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.  Harris, 510

---

[17] Because hostile work environment claims do not employ the McDonnell Douglas burden-shifting framework, see Johnson v. Booker T. Washington Broad. Serv. Inc., 234 F.3d 501, 510 (11th Cir. 2000), "the Swierkiewicz holding is inapplicable to a hostile work environment claim, so the prima facie case for a hostile work environment claim outlined above is a pleading standard." Robinson v. City of Atlanta, No. 1:10-CV-02036-WSD-AJB, 2010 WL 11440788, at *4 (N.D. Ga. Dec. 21, 2010), report and recommendation adopted, No. 1:10-CV-2036-AT, 2011 WL 13096497 (N.D. Ga. Mar. 14, 2011).

U.S. at 21-22; <u>Miller</u>, 277 F.3d at 1276.   The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment.   <u>See</u>, <u>e.g.</u>, <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998); <u>Harris</u>, 510 U.S. at 21-22.   Title VII is not a "general civility code."   <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998).

Defendants urge the Court to disregard the legal conclusions alleged in paragraphs 21-22 and 101 of the Third Amended Complaint and to find that the allegations of paragraphs 39-40, 42, 44-45, and 47-48 fail to show that the alleged conduct by Ms. Hardy was sufficiently severe and pervasive.   The Court concurs with defendants regarding the legal conclusions alleged in paragraphs 21-22 and 101.   <u>See</u> <u>Robinson</u>, 2010 WL 11440788, at *4 (the allegations that "Lee subjected Plaintiff to a hostile work environment based on sex and race" . . . is insufficient because this allegation is a mere legal conclusion").

With regard to the other paragraphs, plaintiff alleges that Ms. Hardy:   (1) made a comment about Mr. Brown's genitals (Third Am. Compl. ¶ 39); (2) hanged up an article of clothing in the office when Mr. Brown retired (<u>id.</u> ¶ 40); (3) told plaintiff not to wear a dress like another gender non-conforming employee had done (<u>id.</u> ¶ 42); (4) used the code word "client" to refer to effeminate or feminine acting men, and once told plaintiff that she could not tell if

28

he was an employee or a client because of his hair style (id. ¶¶ 44-45); (5) distinguished straight women who associated with masculine men verses feminine men by saying "tens han[g] with tens" and "twos hang with twos," implying that masculine men and the women who associated with them would be considered "tens" while men who exhibited feminine traits and the women who associated with them would be considered "twos" (id. ¶ 47); and (6) made derogatory comments about his high-pitched feminine voice, his feminine mannerisms, and his feminine style of dress any time she had contact with him (id. ¶ 48).

The Court notes that the above allegations are thin and create a close case as to whether plaintiff has alleged facts sufficient to show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment. Nevertheless, given the allegation that, "**any time** [plaintiff] had contact with Ms. Hardy, she made derogatory comments about his high-pitched feminine voice, his feminine mannerisms, and his feminine style of dress" (Third Am. Compl. ¶ 48) (emphasis added), the Court finds that plaintiff has alleged enough pervasive harassment to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see also Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (plaintiff is not required to "allege

29

a 'specific fact' to cover every element or allege 'with precision' each element of [the] claim, [but] it is still necessary that [the] complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'") (quoting <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001)).

With regard to element five (i.e., a basis to hold the employer liable), defendants assert only in passing that plaintiff has not satisfied this element, but they fail to substantiate this assertion with any argument or case law.  (<u>See</u> Defs.' Br. [14-1], at 15-17.)  This is likely because the law is clear that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  <u>Faragher</u>, 524 U.S. at 807; <u>see also</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 745 (1998).  Ms. Hardy is alleged to be a supervisor.  (<u>See</u> Third Am. Compl. ¶ 12.)  If Ms. Hardy committed the acts alleged, then plaintiff has made a plausible allegation that the County could be held liable for her misconduct under Title VII.  Therefore, the undersigned **RECOMMENDS** that defendants' Motion to Dismiss the hostile work environment claim alleged in Count Three be **DENIED**.

### 3.    Plaintiff's Claims Under Section 1983

Plaintiff makes claims against Ms. Hardy and Ms. Toomey under Section 1983 for deprivation of his rights under (1) the Equal Protection Clause of the Fourteenth Amendment for their alleged gender-based discrimination (Count Four), and (2) the First Amendment for their alleged retaliation against him for engaging in protected speech (Count Five).[18]  As defendants correctly point out (see Defs.' Br. [14-1], at 17), plaintiff supports his Section 1983 claims with the same facts he alleged in support of his Title VII claims.  Accordingly, "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same."  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

---

[18] Defendants note that plaintiff appears to have abandoned any Section 1983 claims against the County.  (See Defs.' Br. [14-1], at 18.)  However, because plaintiff used the term "defendants" in the Second Amended Complaint (¶¶ 113, 123), defendants are unsure if he still means to sue the County under Section 1983.  (Id.)  Thus, out of an "abundance of caution" (id.), defendants argue that the County could not be held liable under Section 1983 (id. at 18-21.)  The Third Amended Complaint makes **no** Section 1983 claims against the County; the only defendants in the Section 1983 claims are Ms. Hardy and Ms. Toomey.  Therefore, the Court does not address this issue further herein.  If the Court has erred in its interpretation and plaintiff is suing the County under Section 1983, then he can file an objection with the District Judge.

### a)   <u>Count Four:  Equal Protection Clause Claim</u>

As discussed <u>supra</u>, plaintiff's Title VII claim alleged both discriminatory terms and conditions of employment and discriminatory discharge against the County.   The Court noted that the discriminatory terms and conditions claim should proceed to discovery because the County did not seek its dismissal.   The Court recommended, however, that the discriminatory discharge claim be dismissed because plaintiff had alleged no facts showing that the purported decision maker, Ms. Toomey, held an animus against men who failed to conform to gender stereotypes or had recommended his termination to the County on that basis.   For that same reason, plaintiff's Equal Protection Clause discriminatory discharge claim against Ms. Toomey should also be dismissed.[19]

Just as with his Title VII claim, plaintiff makes a discriminatory terms and conditions of employment claim under the Equal Protection Clause.   However, the Third Amended Complaint is devoid of any allegations showing that Ms. Toomey held a bias against gender non-conforming men and thus discriminated against Mr. Johnson on that basis with regard to the terms and conditions of his employment.   All of plaintiff's interaction with a supervisor occurred with Ms.

_____

[19] Although Count Four mentions the word "harassment" (<u>see</u> Third Am. Compl. ¶ 108), it does not seek to recover under Section 1983 for an alleged hostile work environment.

Hardy.   Therefore, plaintiff's Equal Protection Clause discriminatory terms and conditions claim against Ms. Toomey should also be dismissed.

Defendants have also asked the Court to dismiss the Section 1983 claims alleged against Ms. Toomey on the basis of qualified immunity.  (Defs.' Br. [14-1], at 22-23.)[20]  "Qualified immunity offers complete protection to government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation omitted); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although qualified immunity is typically addressed at summary judgment, an official may assert the defense of qualified immunity in a motion to dismiss. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).  "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority."  Harbert

---

[20] It is unclear whether defendants are asserting a qualified immunity defense to both Section 1983 claims asserted against Ms. Toomey (i.e., equal protection/sex discrimination and first amendment retaliation).  Plaintiff responded as if the defense had been asserted against both claims.  (Pl.'s Resp. [18], at 14 ("The facts in Plaintiff's Complaint indicate direct evidence of discrimination and retaliation on the part of Defendant Toomey.").)  The Court will too.

International, Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998).  That burden is met in the allegations of the Third Amended Complaint.

The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right."  Grayden v. Rhodes, 345 F.3d 1225, 1231 (11th Cir. 2003).  It is clearly established that an employee has a constitutional right under the Equal Protection Clause to be free from unlawful sex discrimination in public employment.  See Cross v. State of Ala. Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1508 (11th Cir. 1995); Nicholson v. Ga. Dep't of Human Res. (DHR), 918 F.2d 145, 148 (11th Cir. 1990).  However, to show a violation of the Equal Protection Clause, a plaintiff must show discriminatory motive or purpose.  Cross, 49 F.3d at 1507.

Here, plaintiff has failed to state a plausible claim against Ms. Toomey for violating his clearly established right to be free from sex discrimination.  As already discussed, the Third Amended Complaint is devoid of any well-pleaded allegations showing that Ms. Toomey was responsible for discriminating against Mr. Johnson on the basis of his gender non-conformity, either with regard to the terms and conditions of his employment or his discharge.  He attributes all the misconduct here to Ms. Hardy.  As such, Ms. Toomey is entitled to qualified immunity.  See Painter v. Fulton Cty., Ga., No. 1:08-CV-1989-TCB-RGV, 2010 WL 11493335, at *40 (N.D. Ga. Aug. 4, 2010) (plaintiff's failure to show in her

discrimination claims that officials relied on race in making decisions affecting her entitled them to qualified immunity on same claims alleged under Section 1983), report and recommendation adopted, No. 1:08-CV-1989-TCB, 2010 WL 11493525 (N.D. Ga. Aug. 26, 2010).

Plaintiff seems to acknowledge these deficiencies, so he argues that Ms. Toomey cannot claim qualified immunity because she was aware of what Ms. Hardy was doing to him and failed to stop it.  (Pl.'s Resp. [18], at 13-14.)  In Cross, the Eleventh Circuit denied qualified immunity to a supervisory government official who had knowledge of a subordinate's sexual harassment and discriminatory conduct and failed to do anything in response.  49 F.3d at 1508. The court concluded that "a reasonable person in [the supervisor's] position could not have believed doing nothing in light of [the subordinate's] conduct was lawful, in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights."  Id.  However, "'The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous.'"  Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (quoting Braddy v. Florida Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998)).  For example:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.   A causal connection can be

established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when the supervisor's improper custom or policy . . . resulted in deliberate indifference to constitutional rights. A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

Id. at 995-96.

There are no facts alleged here which could plausibly be read to show (1) that Ms. Toomey personally participated in the alleged constitutional violation, or (2) any causal connection between the actions of Ms. Toomey and the alleged constitutional violation.  The Third Amended Complaint does not allege that Ms. Toomey had actual knowledge of what Ms. Hardy may have been doing to plaintiff or that Ms. Toomey had constructive knowledge of what Ms. Hardy may have been doing to plaintiff.  The Third Amended Complaint mentions various complaints that were made, but fails to allege to whom they were made or the substance of the complaints.  The one thing alleged that Ms. Toomey might have seen in the office—an article of clothing hanging by Mr. Brown's office (see Third Am. Compl. ¶ 40)—could not have made her aware of any alleged harassment of, or discrimination against, plaintiff by Ms. Hardy.  Therefore, the undersigned recommends that plaintiff's Section 1983 claim against Ms. Toomey be dismissed on the basis of qualified immunity.

Defendants' Brief makes no explicit arguments on behalf of Ms. Hardy regarding this Equal Protection Clause claim.  In other words, it does not seek dismissal of either the Equal Protection Clause discriminatory terms and conditions claim or the Equal Protection Clause discriminatory discharge claim. Defendants also did not argue that qualified immunity shields Ms. Hardy from either of those claims.  This means, of course, that both Equal Protection Clause claims that plaintiff has alleged against Ms. Hardy may proceed to discovery.

### b)      Count Five:  First Amendment Retaliation Claim

Plaintiff makes claims against Ms. Hardy and Ms. Toomey under Section 1983 for deprivation of his rights under the First Amendment for their alleged retaliation against him for engaging in protected speech.  (See Third Am. Compl., Count Five).   Since the same facts are alleged in support of the Title VII retaliation claim and the First Amendment retaliation claim, the same pleading deficiencies that led the undersigned to recommend dismissal of the Title VII retaliation claim lead to that same recommendation regarding the First Amendment retaliation claim that plaintiff alleges against Ms. Toomey.

Specifically, as already discussed, there is no allegation that Ms. Toomey knew that plaintiff had complained to the CDC about Ms. Hardy or that Ms. Toomey's recommendation to the County that plaintiff's employment be terminated was causally related to his complaint.  Without such awareness, Ms.

37

Toomey could not be liable for any retaliation.   This means, of course, that plaintiff has failed to allege a plausible First Amendment retaliation claim against Ms. Toomey.[21]

Defendants' Brief makes no explicit arguments on behalf of Ms. Hardy seeking dismissal of the First Amendment retaliation claim alleged against her. Defendants also do not argue that qualified immunity shields Ms. Hardy from that claim.   This means, of course, that the plaintiff's First Amendment retaliation claim against Ms. Hardy may proceed to discovery.

## IV.   CONCLUSION

For the reasons explained above, the undersigned:

**GRANTS** Plaintiff's Motion for Leave to Amend [20].   The Clerk is **DIRECTED** to docket the pleading that plaintiff filed [20-1] as the Third Amended Complaint; and

**RECOMMENDS** that Defendants' Motion to Dismiss [14] be **GRANTED IN PART and DENIED IN PART**.   Specifically, the following claims and parties should be **DISMISSED**:

---

[21] A Section 1983 retaliation claim requires a plaintiff to establish that (1) his speech was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech, and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech.   See Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

(1)     The Title VII retaliation claim alleged against Fulton County (see Third Am. Compl., Count One);

(2)     The Title VII discriminatory discharge claim alleged against Fulton County (id., Count Two); and

(3)     The Section 1983 claims alleged against Kathleen Toomey for gender based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and for retaliation in violation of the First Amendment (id., Counts Four and Five).  Ms. Toomey should be **DISMISSED** as a party and **TERMINATED** from this action.

If the District Judge adopts this Non-Final Report and Recommendation, then plaintiff may proceed to discovery on the following claims:

(1)     The Title VII claims alleged against Fulton County for discrimination in the terms and conditions of plaintiff's employment (Third Am. Compl., Count Two) and for tolerating a sexually hostile work environment (id., Count Three); and

(2)     The Section 1983 claims alleged against Ruby Hardy for gender based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and for retaliation in violation of the First Amendment (id., Counts Four and Five).

39

**SO ORDERED AND RECOMMENDED**, this 12th day of April, 2018.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE